**SEALED**

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY - 6 2015
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | TO BE FILED UNDER SEAL |
| v. | Criminal No. |
| HECTOR OSCAR MOLINA (01) and BLANCA MATA (02), | 3-15CR-0163K |
| Defendants. | |

## INDICTMENT

The Grand Jury charges:

### Introduction

At all times relevant to this Indictment, unless otherwise specified:

### General Allegations

**A. The Medicare Program**

1. The Medicare program ("Medicare") was a federal health insurance program administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the U.S. Department of Health and Human Services. Medicare provided benefits to individuals aged 65 and older and some persons under 65 with recognized disabilities. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

2. Individuals who qualified for Medicare benefits were commonly referred to as Medicare beneficiaries.

3. Physicians that provided services to Medicare beneficiaries were referred to as "Medicare providers." To participate in the Medicare program, providers were required to submit an application in which they agreed to comply with all Medicare related laws and

1

regulations. As part of that application, providers certified that they would not knowingly present or cause to be presented, a false or fraudulent claim for payment by Medicare, and would not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

4. Each provider was required to obtain a National Provider Identifier ("NPI"). The NPI was the standard unique identifier for health care providers.

5. Each Medicare provider was also assigned a Medicare provider number ("PIN"), which allowed the Medicare provider to submit claims to Medicare to obtain payment for services rendered to beneficiaries.

6. To receive payment from Medicare, providers submitted claims to Medicare, either directly or through a billing company.

7. To bill Medicare for services rendered, a provider submitted a CMS claim Form 1500. When a Form 1500 was submitted, usually in electronic form, the provider certified:

   a. the contents of the form were true, correct, and complete;

   b. the form was prepared in compliance with the laws and regulations governing Medicare; and

   c. the services being billed were medically necessary.

8. The Form 1500 also must include the date on which the Medicare provider purportedly performed the service.

9. When submitting each claim, the provider was required to identify the type of service performed by means of the Healthcare Common Procedure Coding System ("HCPCS"). The HCPCS used alphanumeric codes for every task and service a provider could render to a Medicare beneficiary including medical, surgical and diagnostic services. The code used by the

provider in the claim submission dictated the amount of payment the provider received from Medicare for the purportedly rendered service.

10. When submitting the claims, providers also indicated, by means of other alphanumeric codes, where the service was performed (i.e. at the beneficiary's home or in a doctor's office).

11. Medicare provided coverage for outpatient evaluation and management services, which may be provided in an office setting as well as in a beneficiary's home. Evaluation and management services provided in a beneficiary's private residence were commonly referred to as "home visits." A bill for a home visit could be submitted to Medicare using one of several different CPT codes, including but not limited to 99349 and 99350. These CPT codes were defined as follows:

   a. 99349--Home visit for the evaluation and management of an established patient... Physicians typically spend 40 minutes face-to-face with the patient and/or family.

   b. 99350 – Home visit for the evaluation and management of an established patient... Physicians typically spend 60 minutes face-to-face with the patient and/or family.

12. Medicare required that a home visit could only be billed by a physician if the physician was actually present in the beneficiary's home.

## Individuals and Entities

13. The defendant **HECTOR MOLINA**, a resident of Irving, Texas, was a medical doctor who was licensed by the State of Texas. **HECTOR MOLINA** was the

3

owner and operator of Molina Medical Housecall Services, PA, dba U.S. Medical Housecall Services, PA ("Housecall Services"). Housecall Services was located in Dallas, Texas.

14. **BLANCA MATA**, a resident of Forney, Texas, was an employee of Housecall Services and was not licensed by the State of Texas as a medical doctor and did not hold any other medical license in the State of Texas.

### Count One
### Conspiracy to Commit Health Care Fraud
### (Violation of 18 U.S.C. § 1349)

15. The allegations contained in paragraphs 1 through 14 are realleged and incorporated as though fully set forth herein.

16. From on or about June 2012 through on or about January 2015, the exact dates being unknown to the Grand Jury, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendants **HECTOR MOLINA** and **BLANCA MATA** did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to violate 18 U.S.C. § 1347, that is, to execute, and attempt to execute, a scheme and artifice (a) to defraud a health care benefit program affecting commerce, as defined by 18 U.S.C. § 24(b), that is, Medicare, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

17. It was a purpose of the conspiracy that the defendants and their co-conspirators would unlawfully enrich themselves by submitting and causing the submission of false and fraudulent claims to Medicare and diverting the payments by Medicare on those claims for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means of the Conspiracy

18. The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among other things:

19. The defendant, **HECTOR MOLINA,** and co-conspirators known and unknown to the Grand Jury, would pay or cause to be paid money to the defendant, **BLANCA MATA,** in exchange for her visiting the homes of beneficiaries.

20. The defendant, **BLANCA MATA,** went to the residences of Medicare beneficiaries to provide services without **HECTOR MOLINA** present.

21. The defendant, **HECTOR MOLINA,** and coconspirators known and unknown to the Grand Jury, including **BLANCA MATA,** would submit and cause to be submitted false and fraudulent claims to Medicare for home visits that were performed by **BLANCA MATA,** who was not a physician, but billed to Medicare as if **HECTOR MOLINA,** a physician, had performed them.

In violation of 18 U.S.C. § 1349.

Counts Two through Five
Health Care Fraud
(Violations of 18 U.S.C. §§ 1347 and 2)

22.   The allegations contained in paragraphs 1 through 21 are realleged and incorporated as though fully set forth herein.

23.   On or about the dates specified below, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendants **HECTOR MOLINA** and **BLANCA MATA**, aided and abetted by others and aiding and abetting others known and unknown to the grand jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice (a) to defraud a health care benefit program affecting commerce, as defined by 18 U.S.C. § 24(b), that is, Medicare, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services by submitting, causing the submission, and aiding and abetting in the submission of false and fraudulent claims to Medicare seeking payment for physician home visits purportedly made by **HECTOR MOLINA** for home visits that were actually performed by **BLANCA MATA**:

| Ct | Beneficiary | Service Billed | Date of Purported Physician Home Visit | Approx. date of claim | Claim Number | Amount of Medicare Claim |
|---|---|---|---|---|---|---|
| Two | MS | Physician Home Visit 99350 | July 30, 2014 | August 1, 2014 | 453214213451520 | $250.00 |
| Three | LS | Physician Home Visit 99350 | July 30, 2014 | August 1, 2014 | 453214213451460 | $250.00 |
| Four | DW | Physician Home Visit 99350 | August 4, 2014 | August 6, 2014 | 453214218187090 | $250.00 |
| Five | KW | Physician Home Visit 99350 | August 4, 2014 | August 6, 2014 | 453214218187070 | $250.00 |

Each in violation of 18 U.S.C. §§ 1347 and 2.

6

## Counts Six through Nine
## Health Care Fraud
### (Violations of 18 U.S.C. §§ 1347 and 2)

24.     The allegations contained in paragraphs 1 through 21 are realleged and incorporated as though fully set forth herein.

25.     On or about the dates specified below, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendant **HECTOR MOLINA** aided and abetted by others and aiding and abetting others known and unknown to the grand jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice (a) to defraud a health care benefit program affecting commerce, as defined by 18 U.S.C. § 24(b), that is, Medicare, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services by submitting, causing the submission, and aiding and abetting in the submission of false and fraudulent claims to Medicare seeking payment for physician home visits purportedly made by **HECTOR MOLINA** when **HECTOR MOLINA** was in fact outside of the United States:

| Ct | Beneficiary | Service Billed | Date of Purported Physician Home Visit | Approx. date of claim | Claim Number | Amount of Medicare Claim |
|---|---|---|---|---|---|---|
| Six | GW | Physician Home Visit 99349 | February 17, 2011 | March 2, 2011 | 452911061262150 | $200.00 |
| Seven | RS | Physician Home Visit 99349 | February 18, 2011 | March 2, 2011 | 452911061262240 | $200.00 |
| Eight | DW2 | Physician Home Visit 99350 | May 22, 2014 | May 29, 2014 | 453214149566620 | $250.00 |
| Nine | DB | Physician Home Visit 99350 | May 23, 2014 | May 29, 2014 | 453214149566470 | $250.00 |

Each in violation of 18 U.S.C. §§ 1347 and 2.

Criminal Forfeiture
(18 U.S.C. § 982)

26.     The allegations contained in paragraphs 1 through 31 are realleged and incorporated as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants have an interest.

27.     Upon conviction of any federal health care offense, the defendants **HECTOR MOLINA** and **BLANCA MATA** shall forfeit to the United States property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

28.     The property that is subject to forfeiture includes but is not limited to a money judgment in the amount of at least $5.2 million, which represents the approximate gross proceeds of the fraud.

29.     Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendants:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable property, including, but not limited to, any identifiable property in the name of the defendants **HECTOR MOLINA** or **BLANCA MATA.**

All pursuant to 18 U.S.C. § 982(a)(7), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C § 982(b)(1).

A TRUE BILL

_____
FOREPERSON

JOHN R. PARKER
Acting United States Attorney

_____
JASON KNUTSON
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
Texas State Bar No. 24033928
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8792
Facsimile: 214.659.8805
Email: jason.knutson@usdoj.gov

**SEALED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

HECTOR OSCAR MOLINA (01)
BLANCA MATA (02)

### SEALED INDICTMENT

18 U.S.C. § 1349
Conspiracy to Commit Health Care Fraud

18 U.S.C. §§ 1347 and 2
Health Care Fraud

18 U.S.C. § 982
Criminal Forfeiture

9 Counts

A true bill rendered

_____   _____
DALLAS                                                    FOREPERSON

Filed in open court this _____ day of May, 2015.

-----------------------------------------------------------------------
                                                                  Clerk

Warrants to be Issued: Hector Oscar Molina (01) and Blanca Mata (02)

_____
UNITED STATES DISTRICT/MAGISTRATE JUDGE
No Criminal matter pending